# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ROSE MARIE ALLENSTEIN, as the Administrator of the Estate of LISA DANIEL (Deceased), | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 4:21-cv-00793-JHE<br>) |
| COMMISSIONER OF SOCIAL SECURITY, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Rose Marie Allenstein ("Claimant"), as the Administrator of the Estate of Lisa Daniel ("Daniel"), seeks review, pursuant to 42 U.S.C. § 405(g) and § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Daniel's application for supplemental security income ("SSI"), a period of disability, and disability insurance benefits ("DIB"). (Doc. 1). Daniel, and later the administrator of her estate, timely pursued and exhausted administrative remedies.[2] This case is

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

[2] As discussed in the procedural history below, Daniel passed away during the administrative proceedings. After her passing, Myron K. Allenstein (Daniel's attorney in the administrative proceedings and throughout most of the proceedings in this court) was appointed the administrator of Daniel's estate. (*See* doc. 10). In June 2022, Mr. Allenstein passed away. (*See* doc. 18). On July 21, 2022, Attorney Jason P. Bailey appeared as counsel. (Doc. 21). Subsequently, Rose Marie Allenstein was appointed administrator of Daniel's estate and substituted as plaintiff pursuant to Federal Rule of Civil Procedure 25(a)(1). (Docs. 22 & 23).

therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Daniel protectively filed an application for a period of disability and DIB on February 25, 2019. (Tr. 24, 185-93). Daniel also filed an application for SSI on March 5, 2019. (Tr. 24, 194-98). In both applications, Daniel alleged disability beginning on December 15, 2018. (*Id.*). The Commissioner initially denied Daniel's claim (tr. 114-18), and Daniel requested a hearing before an ALJ (tr. 121-25). The ALJ held the hearing on March 4, 2020. (Tr. 55-80).

Daniel passed away on March 28, 2020, prior to the ALJ issuing a decision.[3] (Tr. 218). The ALJ denied Daniel's claim on April 20, 2020. (Tr. 21-43). On June 22, 2020, Daniel's daughter was substituted as claimant and informally requested review by the Appeals Council of the Commissioner's decision. (Tr. 180-81). Daniel's daughter formally requested review on July 20, 2020. (Tr. 182-84). On September 24, 2020, the Appeals Council denied review of the disability claim and dismissed the request for review of the SSI claim. (Tr. 11-17). On February 26, 2021, the Appeals Council set aside its previous decision, but again denied review of the disability claim and dismissed the request for review of the SSI claim.[4] (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On June 23, 2020, this action was initiated. (Doc. 1).

Daniel was 48 years old on her alleged onset date. (Tr. 37). Daniel had past relevant work as an elementary school teacher and as a food server. (Tr. 36-37).

---

[3] Daniel's death certification indicates the manner of death was suicide. (Tr. 218).
[4] The Appeals Council determined that neither Daniel's daughter nor any other person was eligible to receive an SSI underpayment. (*See* tr. 2).

## II. Standard of Review[5]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

---

[5] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[6]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed

---

[6] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

4

impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Daniel had not engaged in substantial gainful activity since December 15, 2018, her alleged onset date. (Tr. 26). At Step Two, the ALJ found Daniel has the following severe impairments: bipolar disorder, attention deficit hyperactivity disorder, generalized anxiety disorder, fibromyalgia, right foot arthritis, calcaneal spurs in bilateral feet, right knee patellofemoral osteoarthritis, obesity, and lumbar pars defect with listhesis. (Tr. 26). At Step Three, the ALJ found Daniel does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27).

Before proceeding to Step Four, the ALJ determined Daniel's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Daniel has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: She can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She should have no exposure to unprotected heights, hazardous machinery, or commercial driving. She can understand, remember, and carry out simple instructions. She can have occasional contact with coworkers and the general public. Changes in the work environment or expectations should be infrequent and introduced gradually.

(Tr. 30). At Step Four, the ALJ determined Daniel was unable to perform any of her past relevant work. (Tr. 36). At Step Five, the ALJ determined, based on Daniel's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Daniel could perform. (Tr. 37-38). Therefore, the ALJ determined Daniel has not been under a disability and denied her claim. (Tr. 38).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Claimant raises two objections to the Commissioner's decision. First, Claimant argues the ALJ improperly disregarded the opinions of Daniel's treating physician, Dr. Larry Scarborough. (Doc. 12 at 12-16). Second, Claimant argues the ALJ's hypothetical question posed to the vocational expert at the hearing was not based on Daniel's full limitations. (*Id.* at 16-19).

### A. The ALJ Appropriately Considered Dr. Scarborough's Opinion

Claimant's challenge to the ALJ's decision is based on the ALJ's allegedly erroneous application of the "treating physician rule." (Doc. 12 at 12-16). This rule was part of the regulatory framework applicable to applications filed before March 27, 2017. Under those regulations (and Eleventh Circuit caselaw interpreting them) a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), in turn citing 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted).  However, the Eleventh Circuit has held that the Commissioner's subsequent regulations eliminating the treating physician rule also abrogated the caselaw on which Claimant relies. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).  Instead, for claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and "other factors."  20 C.F.R. § 404.1520c(c).  Under the new regulations, an ALJ is required to explain how she considered the supportability and consistency factors, and may explain how she considered the remaining factors.  20 C.F.R. § 404.1520c(b)(2).

Claimant's only allegation of error is that the ALJ failed to show good cause for rejecting Dr. Scarborough's opinion under the treating physician rule.  As the Eleventh Circuit held in *Harner*, that argument cannot support reversal because the treating physician rule did not apply in Daniel's claim.[7]  Therefore, Claimant has not shown a basis for reversal, and the Commissioner's decision is due to be affirmed on that basis.

---

[7] Claimant cites the Eleventh Circuit's decision in *Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908 (11th Cir. 2021), for the proposition that "analysis under the new rules is similar to

7

In the alternative, there would be no basis for reversal if the undersigned considered the ALJ's treatment of Dr. Scarborough's opinion under the new regulations.  Claimant relies on a Physical Capacities Evaluation completed by Dr. Scarborough on December 13, 2019.  (Doc. 12 at 12).  On that one-page form, Dr. Scarborough identified Daniel's conditions as back pain and heel spurs.  (Tr. 958).  He circled responses indicating Daniel could sit upright for two hours at a time, stand for two hours at a time, and would be expected to be lying down, sleeping, or sitting with legs propped up for two hours during an eight-hour workday.  (*Id.*).  Dr. Scarborough indicated Daniel would be off-task for 50% of an eight-hour day and would miss five days of work in a thirty-day period due to her physical symptoms.  (*Id.*).

The ALJ found this opinion partially persuasive.  (Tr. 35).  Specifically, the ALJ rejected Dr. Scarborough's statements regarding Daniel's need to lie down for two hours per workday, have excessive absenteeism, and be off task, pointing to the objective medical evidence including relatively mild findings on imaging.  (*Id.*).  Specifically, the ALJ identified foot X-rays from April 2019 showing diffuse arthritic changes in Daniel's right foot and July 2019 showing plantar

---

analysis under the Treating Physician Rule." (Doc. 12 at 14-15).  However, the opinion Claimant cites was withdrawn, and a different opinion substituted after rehearing. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1097 (11th Cir. 2021) ("The opinion previously issued as 1 F.4th 908 (11th Cir. 2021), is withdrawn and the following opinion is issued in its stead."). While the portion of the withdrawn opinion Claimant cites indicates the treating physician rule is similar to the new regulations, the substituted opinion specifically disclaims any need to consider the impact of the new regulations on the treating physician rule because the plaintiff's claim was decided under the old regulations. *Simon*, 7 F.4th at 1104 n.4 ("Because Simon filed his claim in March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). To the extent Claimant argues the withdrawn opinion is controlling or even informative, Claimant is mistaken; it is a nullity.  Furthermore, *Harner* explicitly addressed the issue of whether the treating physician rule is still good law in this circuit, eliminating the need to draw an inference from an opinion that did not directly address that issue.

calcaneal spurs, but numerous other foot X-rays showing no acute fracture or dislocation, as well as treatment notes indicating normal gait and normal muscle strength in both feet. (Tr. 33). The ALJ also noted that while imaging of Daniel's lumbar spine showed pars defect, musculoskeletal examinations repeatedly showed normal findings.[8] (Tr. 33-34). Claimant's only counter to this is that "Dr. Scarborough's opinion was well supported by treatment records at Quality of Life Health Services," citing the entire body of such records (nearly 200 pages) and a summary of those records in Claimant's brief. (*Id.*). However, nowhere in the summary or the records does Claimant offer anything to dispute the ALJ's conclusions.

While there is evidence in the record that might support a different finding, other record evidence is consistent with the ALJ's characterizations. The court does not reweigh such evidence on appeal. *Walden*, 672 F.2d at 838. Accordingly, the undersigned concludes the ALJ's determination was supported by substantial evidence.

### B. The ALJ Appropriately Considered Vocational Expert Testimony

Claimant's final argument is that the ALJ posed a hypothetical to the vocational expert ("VE") that did not include all of Daniel's impairments. (Doc. 12 at 16-19). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219,

---

[8] The ALJ also pointed to purportedly normal findings the undersigned does not consider to be substantial evidence. First, the ALJ indicated Daniel reported no back pain at an emergency room visit at Floyd Medical Center. (Tr. 34) (citing Exhibit B14F). However, that visit was prompted by mental symptoms Daniel experienced after abruptly stopping drinking after decades of alcohol abuse. (Tr. 712, 734). Second, the ALJ pointed to a visit to Gadsden Regional Medical Center in August 2019 at which Daniel purportedly reported "no back pain, no neck pain, no joint pain, no muscle pain, and no decreased range of motion." (Tr. 34) (citing Exhibit B16F). This visit was for an intentional overdose and suicide attempt. (Tr. 921). In neither case is it apparent why a doctor would have performed tests concerning Daniel's low back pain.

1227 (11th Cir. 2002). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Further, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

Here, the ALJ posed a hypothetical to the VE that assumed Daniel could perform light work with the restrictions she ultimately adopted as part of Daniel's RFC. (Tr. 77-78). Based on that hypothetical, the VE identified available jobs in the economy Daniel could perform: block inspector, marker, and garment sorter. (Tr. 78). Claimant contends the hypothetical "did not fully state plaintiff's impairments and limitations" (doc. 12 at 19), but never specifically identifies any impairment or limitation the ALJ ought to have included. Without some indication of what Claimant contends the ALJ should have included in the hypothetical, the undersigned cannot conclude the ALJ's decision was not supported by substantial evidence based on her reliance on the VE's testimony.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Daniel's claim for supplemental security income, a period of disability, and disability insurance benefits is **AFFIRMED**.

DONE this 28th day of September, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE